| | | |
|---|---|---|
| **BARBARA GALANTE**, individually | : | **CIVIL ACTION** |
| **and as Executrix of the Estate of** | : | |
| **John A. Galante** | : | **NO. 16-5198** |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **FINANCIAL INDUSTRY REGULATORY** | : | |
| **AUTHORITY, INC.**, *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                    MAY 2, 2018

# MEMORANDUM OPINION

## INTRODUCTION

Before this Court are cross-motions for summary judgment filed pursuant to Federal Rule of Civil Procedure ("Rule") 56 by Defendant Sun Life Assurance Company of Canada ("Sun Life"), [ECF 38], and by Plaintiff Barbara Galante ("Plaintiff"), [ECF 40].[1] These cross-motions stem from a complaint filed by Plaintiff, in her own name and as Executrix of the Estate of John A. Galante ("Galante"), under the Employment Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. § 1101, *et seq.* [ECF 1].

In her complaint, Plaintiff asserts under 29 U.S.C. § 1132(a)(3)(B) a breach of fiduciary duty claim against Sun Life in relation to the denial of her beneficiary claim under an insurance welfare benefit plan (the "Plan"), established, maintained, and sponsored by the Financial Industry Regulatory Authority, Inc., ("FINRA"), Galante's employer. The Plan provides short-

---

[1]      In adjudicating the pending cross-motions for summary judgment, this Court has also considered Plaintiff's exhibits in support of her motion for summary judgment, [ECF 41, 42], Sun Life's response in opposition to Plaintiff's motion for summary judgment, [ECF 46], Plaintiff's response in opposition to Sun Life's motion for summary judgment, [ECF 44], Sun Life's notice of supplemental authority, [ECF 56], and Plaintiff's response to the notice of supplemental authority. [ECF 58].

term and long-term disability benefits, and life insurance coverage to FINRA's participating employees.

Sun Life, as the insurer and claim administrator of the Plan, disputes Plaintiff's allegations and argues that when Galante died, he was no longer insured and, therefore, there was no breach of any fiduciary duties in administering the Plan or in denying coverage.

The issues raised in the parties' respective motions have been fully briefed and are ripe for disposition. For the reasons set forth, Sun Life's motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied. Consequently, summary judgment is entered in favor of Sun Life.

## BACKGROUND

ERISA is a federal statute that establishes the minimum standards for most voluntarily established pension and health plans in private industry to protect individuals participating in these plans. ERISA requires plans to provide participants with important plan information, such as the plan features and funding; provides fiduciary responsibilities for those who manage and control plan assets; requires plans to establish a grievance and appeals process for participants to get benefits from their plans; and gives participants the right to sue for benefits and breaches of fiduciary duty. *See* 29 U.S.C. §§ 1001-1461.

To provide context to the parties' cross-motions for summary judgment, a digest of the relevant facts is appropriate*; to wit*: [2]

---

[2]     The facts are derived from the parties' respective briefs and submissions. Because this Court concludes that Sun Life is entitled to summary judgment, to the extent facts are disputed, such disputes are noted and, if material, construed in Plaintiff's favor. Facts asserted by a party and supported by the record that are uncontested by the other party, whether directly or by implication, are taken to be true. *See* Fed. R. Civ. P. 56(c).

In 2005, John A. Galante ("Galante") commenced his employment with FINRA. (Pl.'s Br. [ECF 40-3] at 4). As part of his employment benefits, Galante maintained a "basic" group life insurance policy of $173,000.00, at no cost to Galante, with an "optional" supplemental group life coverage of $260,000.00, (the "Policy"),[3] for which Galante paid monthly premiums by payroll deduction. (*Id.*). The Policy was issued by Sun Life, and Barbara Galante (Plaintiff), Galante's spouse, was the named beneficiary. (Sun Life's Mot. [ECF 38] at ¶ 4).

FINRA was Galante's employer and sponsor of Sun Life's group insurance plan, which is governed by ERISA and is self-administered. Sun Life is the claims administrator and a fiduciary of the Plan.[4] The Plan is subject to Maryland law.[5]

On March 3, 2013, Galante, then sixty-five years old, was diagnosed with a congestive heart failure condition and stopped working. (Pl.'s Br. at 4). Under the terms of the Policy, because he was sixty-five years old when he stopped working, his insurance coverage continued for twelve months with the payment of premiums. (Policy at 30). Galante died on July 28, 2015. (Pl.'s Br. at 6).

After leaving his employment and prior to his death, Galante continued to remit his monthly insurance premium payments to FINRA. FINRA forwarded the premium payments owed by all covered employees to Sun Life in a monthly gross lump payment. (*Id.* at 5).

Galante did not exercise his option to convert his group insurance policy to an individual policy.[6]

After Galante died, Plaintiff filed a claim for the life insurance proceeds she believed were owed to her. Sun Life denied the claim on the grounds that when Galante stopped working on March 3, 2013, he was sixty-five years of age, and that pursuant to the terms of the Policy, his insurance coverage ceased on March 3, 2014, when Galante failed to convert the expired group insurance policy to an individual insurance policy. [ECF 38-4, 38-6].

---

[3]    A copy of the Policy is docketed as ECF 38-1.

[4]    The primary responsibility of fiduciaries is to run the plan solely in the interest of participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries. 29 U.S.C. § 104(a)(1)(A).

[5]    It is undisputed that Maryland law applies in this case, to the extent not preempted by ERISA. (*See* Policy at 1) ("This Policy is delivered in Maryland and is subject to the laws of that jurisdiction.").

[6]    Plaintiff contends that Galante had not been informed of his right to make the conversion and, therefore, did not exercise that option. (Sun Life's Mot. ¶ 13; Pl.'s Resp., [ECF 44], ¶¶ 13, 20).

Plaintiff filed an unsuccessful administrative appeal of the denial of benefits. On September 30, 2016, Plaintiff filed this civil action asserting a claim for breach of fiduciary duty against Sun Life. [ECF 1].

The parties do not dispute that Galante was eligible for coverage under the Policy while employed by FINRA and, at a minimum, for an additional twelve months after he stopped working due to illness. The parties disagree, however, on whether Sun Life breached its fiduciary duties to Galante in its administration of the Plan, interpretation of the Policy, and in denying Galante coverage, particularly in regards to notifying Galante of his right to convert the group policy to an individual policy prior to the group policy's expiration. As noted, Galante died almost sixteen months after his group coverage terminated in March 2014 pursuant to the terms of the Policy.

The Policy provisions relevant to this dispute provide:

### Termination of Employee's Insurance

An employee will cease to be insured on the earliest of the following dates:
* * *
the end of the month in which employment terminates. Ceasing to be Actively at Work will be deemed termination of employment, except:

the Policyholder may continue the insurance by paying the required premiums, subject to the following:
* * *
For Life Insurance-insurance may be continued for up to 12 months after an Employee is absent from work due to Injury or Sickness. However, if an Employee is under age 65, the Employer may continue an Employees insurance until the earlier of [] the date the Employee attains age 70; or [] the date the Employee is no longer receiving Long Term Disability benefits under the Employer's plan.

(Policy at 30).

To convert from group coverage to individual coverage, the Policy provided:

> If all or part of an Employee's Life Insurance ceases or reduces due to: [] termination of his employment; or [] termination of his membership in an Eligible Class . . . then the Employee may apply for an individual policy on his own life up to the amount that ceased.

(Policy at 19).

To convert to an individual policy, a:

> written application must be made to Sun Life along with payment of the first premium, within the 31 day period (the 31 day conversion period) following the date the insurance ceases or reduces. If the Employee is not given notice by the Employer of this conversion privilege within 15 days following the date his insurance ceases or reduces, the Employee shall have an additional 15 days to exercise this conversion privilege. In no event will this conversion privilege be extended beyond 60 days following the 31 day conversion period.

(*Id.* at 20).

Galante stopped working on March 3, 2013, due to an illness and commenced receiving disability benefits. (Pl.'s Br. at 4). Under the specific terms of the Policy, described above, because Galante was sixty-five years old when he stopped working, Galante was permitted to continue paying for and receiving his group insurance coverage for a period of twelve months, or until March 3, 2014. Thereafter, Galante had, at most, ninety-one days from March 3, 2014 to convert his group policy to an individual policy. (Sun Life's Mot. ¶ 20; Compl. Ex. F). There is no dispute that Galante did not convert his group policy to an individual policy.

Also relevant to our analysis are provisions of the Administrative Services Agreement (the "Agreement"), between FINRA and Sun Life, which delineated the parties' responsibilities for administrative services. [ECF 38-3]. Therein, FINRA agreed, *inter alia,* to:

> a. Provide Sun Life with a weekly report listing all Plan participants and dependents whose coverage has terminated, in whole or in part, under the Policy (collectively, "Plan Participants") who may be eligible to apply for the Conversion

    and Portability Privileges under the Policy (the "Weekly Report");

    b.  Be solely responsible for determining the Plan Participants to be listed on the Weekly Report;

    c.  Provide the Weekly Report in a format to be agreed upon by the parties;

    d.  Provide the following information on the Weekly Report for each Plan Participant: (a) the Plan Participant's name, address and phone number; (b) the date the Plan Participant's group insurance coverage terminated; (c) the date the Plan Participant last worked; (d) the amount of coverage that the Plan Participant is eligible to convert or continue; and (e) any other information reasonably needed by Sun Life to carry out its obligations under this Agreement; and

    e.  Provide notice to Sun Life for each Plan Participant who is eligible to apply for Conversion and Portability Privileges under the Policy within 30 calendar days of the termination of the Plan Participant's coverage under the Policy.

(Agreement at 2).  In exchange, Sun Life agreed, *inter alia*, to "provide certain non-fiduciary and nondiscretionary administrative services to provide notice to Plan Participants identified by [FINRA] on the Weekly Report of their right to exercise the Conversion and Portability Privileges under the Policy."  (*Id.*).

    Under the terms of the Agreement, if FINRA did not provide Sun Life with the above information then:

    (a) Sun Life shall be relieved of any obligation under this Agreement to provide notice to any Plan Participant to whom it otherwise would have been obligated to provide notice . . . and (b) [FINRA] shall be solely responsible for notifying any such Plan Participant that he or she may be eligible to apply for the Conversion and Portability Privileges under the Policy.

(*Id.*).  The Agreement also provided that "Plan Participants not named on the Weekly Report will not be allowed an extension of time in which to file an application to exercise a Privilege (other than as permitted by the Policy) and must file their application within the deadlines set forth in the Policy" and that Sun Life has "no duty to send a Notice to a Plan Participant if [FINRA] fails

to comply with the requirements of sections A.1.a, A.1.d, or A.1.e, or provides inaccurate contact information from the Plan Participant.  (*Id.* at 3).

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 56 governs summary judgment motion practice. Fed. R. Civ. P. 56.  Under the rule, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id*.  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  Under Rule 56, the court must view the evidence in the light most favorable to the non-moving party.  *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).

Generally, Rule 56(c) provides that the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which the movant "believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case."  *Id*. at 322.  After the moving party has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute."  *See* Rule 56(c)(1)(A-B).  The nonmoving party must "do more than simply show that there is some metaphysical doubt as to

the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). The nonmoving party may not rely on bare assertions, conclusory allegations, or suspicions, *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings. *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*.

The standards to be applied in deciding cross-motions for summary judgment are the same as those applied when only one party has filed a summary judgment motion. *Cincinnati Ins. Co. v. Devon Intern., Inc.,* 924 F. Supp. 2d 587, 589 n.3 (E.D. Pa. 2013). "When confronted with cross-motions for summary judgment, the 'court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Anderson v. Franklin Institute*, 185 F. Supp. 3d 628, 635 (E.D. Pa. 2016) (quotations omitted).

**DISCUSSION**

Notably, Plaintiff does not assert a "denial of benefits" claim against Sun Life pursuant to 29 U.S.C. § 1132(a)(1), but rather seeks equitable relief pursuant to 29 U.S.C. § 1132(a)(3)(B)[7] based on Sun Life's alleged breaches of fiduciary duty. (*See* Compl. at 11; *see also* ECF 1 at 1 (noting the cause of action was brought pursuant to 29 U.S.C. § 1132(a)(3)(B)). The standard of

---

[7]     "A civil action may be brought [] by a participant, beneficiary, or fiduciary [] to obtain other appropriate equitable relief . . . ." 29 U.S.C. § 1132(a)(3)(B).

review is *de novo*.[8]

In denying Plaintiff's claim for benefits under the Policy, Sun Life concluded that Galante's insurance coverage had terminated prior to his death, and essentially provided the following rationale for its determination: Galante was sixty-five years old when he ceased working; he was entitled to twelve months coverage thereafter upon payment of the premiums; and that prior to his death Galante had not converted his group coverage to an individual coverage within the time period to do so. (Sun Life Br. at 7).

While these facts are not disputed, Plaintiff nevertheless contends that Sun Life breached a fiduciary duty owed to Galante and, as a result of the breach, she is entitled to the equitable relief claimed; *to wit*: a surcharge and/or a reversal of the claims determination in order to make Plaintiff whole for the previous denial of the insurance claim, plus interest and attorneys' fees. (Pl.'s Mot. at 49-51). Plaintiff argues that Sun Life breached its fiduciary duty by: (1) failing to provide FINRA and/or Galante with a "certificate" explaining the insurance coverage and any conversion right provided, as required by Maryland law; (2) failing to provide Galante with notice of his right to convert to an individual policy, as required by Maryland law; (3) denying

---

[8]    "[A] denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989)). "If the plan gives the administrator or fiduciary discretionary authority to make eligibility determinations, [the court] review[s] its decisions under an abuse-of-discretion (or arbitrary and capricious) standard." *Id.* Under the arbitrary and capricious standard, a district court must defer to the administrator unless the administrator's decision is clearly unreasonable, not supported by the evidence in the record, or the administrator has failed to comply with the procedures required by the plan. *Abnathya v. Hoffman La-Roche, Inc.,* 2 F.3d 40, 41 (3d Cir. 1993). Here, the parties agree that the applicable standard of review is the *de novo* standard, (Pl.'s Br. at 2; Sun Life's Resp. at 5), but Plaintiff's basis for so arguing is that the Policy does not give Sun Life the requisite discretion to deny benefits or construe the Policy to afford it the arbitrary and capricious standard of review. (Pl.'s Br. at 2-4). The "arbitrary and capricious standard of review" only applies to denial of benefits claims brought pursuant to § 1132(a)(1)(B), and not to claims brought pursuant to § 1132(a)(3)(B). Because Plaintiff's claims are brought pursuant to § 1132(a)(3)(B), the *de novo* standard of review applies.

coverage despite accepting premiums until Galante's death; (4) discriminating against Galante on the basis of age; (5) failing to send out conversion notices in violation of the Agreement; (6) failing to produce the entire administrative record; and (7) failing to apply a December 1, 2015 amendment to the Policy retroactively to Galante.

This Court will address Plaintiff's alleged contentions to determine whether a breach of a fiduciary duty owed by Sun Life to Galante and, ultimately, to Plaintiff, occurred.[9]

ERISA provides that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and -- (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1)(A), (B).

In addition to these duties, an ERISA fiduciary is bound by the traditional obligations a fiduciary owes to those to whom he or she is required to be loyal. *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009). "Accordingly, an ERISA fiduciary may not, in the performance of [its] duties, materially mislead those to whom the duties of loyalty and prudence are owed." *Id.* (internal quotations omitted). "This responsibility

---

[9]     While Plaintiff does not assert a denial of benefits claim under § 1132(a)(1), this Court notes that a review of the record and Policy establishes that Galante was not insured at the time of his death and, accordingly, Plaintiff was not entitled to benefits. It is undisputed that at the time of Galante's death, the group insurance policy that had provided him coverage for twelve months following his cessation of employment had expired, and that Galante had not, at any time, converted the group insurance policy to an individual policy. Thus, under the unambiguous terms of the Policy, Plaintiff is not entitled to benefits. However, as noted, Plaintiff's claim is not premised directly on the terms of the Policy and is not a claim for denial of benefits, but rather a claim for equitable relief based on alleged breaches of fiduciary duty by Sun Life. Thus, this Court considers only whether Sun Life's alleged actions or omissions constituted a breach of a fiduciary duty owed to Galante and/or Plaintiff.

encompasses not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Id.* (internal quotations omitted). A breach of fiduciary duty claim may be premised on either a misrepresentation or an omission. *Id.* "To establish such a breach, a plaintiff must demonstrate that: (1) the defendant was acting in a fiduciary capacity; (2) the defendant made affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure." *Id.* (internal quotations omitted). It is within this framework that this Court considers Plaintiff's alleged breach of fiduciary claim.

### Failing to Provide a Certificate as Required by Maryland Law

Plaintiff argues that under applicable Maryland law, a group life insurance policy must contain a provision requiring the insurer to issue to the policyholder a "certificate" explaining the coverage and any conversion rights provided. (Pl.'s Br. at 21). Though Plaintiff concedes that the Policy actually contained such a provision,[10] Plaintiff argues that no such certificate was provided by Sun Life to either FINRA or Galante in violation of Maryland law, and that such violation constituted a breach of Sun Life's fiduciary duty. (*Id.* at 21-26). Sun Life disputes any

---

[10] The Policy provides that:

> Sun Life will provide a Certificate to the Policyholder for delivery to each Employee. The Certificate is intended to provide a brief explanation of the Policy benefits, but it does not form a part of this Policy. If the terms of a Certificate and this Policy differ, this Policy will govern.

(Policy at 34). A "Certificate" is defined as a

> written booklet prepared by Sun Life which includes any Riders, Endorsements or Amendments, containing a summary of: 1. the insurance benefits an Employee is entitled to; 2. to whom the benefits are payable; and 3. any limitations, exclusions or requirements that may apply.

(*Id.* at 8).

such obligation and, further, counters that the Maryland law requirement of the delivery of a certificate is preempted by ERISA. (Sun Life Resp. at 6-8). This Court agrees with Sun Life.

ERISA requires the "administrator" of each employee benefit plan (in this case FINRA) to furnish particular documents to the insured and the beneficiaries, none of which includes an insurance certificate like that required by the Maryland Insurance code. *See* 29 US.C. §§ 1021, 1025. In so doing, ERISA seeks to make the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures, with the intention that those systems and procedures be uniform. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 651, 656 (1995). In order to promote this uniformity, ERISA "contains what may be the most expansive express pre-emption provision in any federal statute." *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 947 (2016). It requires that, "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). Interpreting this provision, the Supreme Court "has described two categories of state laws that ERISA pre-empts;" *to wit*:

> First, ERISA pre-empts a state law if it has a reference to ERISA plans. To be more precise, [w]here a State's law acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation . . . , that reference will result in pre-emption. Second, ERISA pre-empts a state law that has an impermissible connection with ERISA plans, meaning a state law that governs . . . a central matter of plan administration or interferes with nationally uniform plan administration.

*Gobeille*, 136 S. Ct. at 943. (Internal quotations and citations omitted). "[R]eporting, *disclosure*, and recordkeeping are central to, and an essential part of, the uniform system of plan administration contemplated by ERISA." *Id.* at 945 (emphasis added).

Section 17-308 of the Maryland Insurance Code provides that each:

> policy of group life insurance shall contain a provision that
> requires the insurer to issue to the policyholder, for delivery to
> each insured, an individual certificate that states: (1) the insurance
> protection to which the insured is entitled; (2) each person to
> whom the insurance benefits are payable; and (3) the rights and
> conditions set forth in § 17-102 of this title and §§ 17-309 through
> 17-311 of this subtitle.

Md. Code Ann., Ins. § 17-308.

In reviewing the § 17-308 certificate requirement, this provision can be considered one of disclosure and, therefore, would be preempted by § 1144(a) of ERISA. However, subsection (b) of § 1144 provides that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities . . . ." *Id.* § 1144(b)(2)(A). Subsection (b) is often referred to as ERISA's "saving clause." See *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 334 (2003). Thus, to determine whether saving clause applies, one must determine whether the purpose of § 17-308 is to "regulate" insurance.

The Supreme Court has held that "a state law must be 'specifically directed toward' the insurance industry in order to fall under ERISA's saving clause; laws of general application that have some bearing on insurers do not qualify." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 334 (2003) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 50 (1987)). "At the same time, not all state laws 'specifically directed toward' the insurance industry will be covered by § 1144(b)(2)(A), which saves laws that regulate *insurance,* not insurers." *Id.* (emphasis in original). For the saving clause to apply, the "insurers must be regulated with respect to their insurance practices." *Id.* (internal quotations omitted). Accordingly, "for a state law to be deemed a 'law . . . which regulates insurance' under § 1144(b)(2)(A), it must satisfy two requirements. First, the state law must be specifically directed toward entities engaged in insurance. Second, . . . the state law must substantially affect the risk pooling arrangement

between the insurer and the insured." *Id.* at 341-42 (internal citations omitted). To affect the risk pooling, the state law must "alter the scope of permissible bargains between insurers and insureds" and thus substantially affect the risk-pooling "arrangements that insurers may offer." *Id.* at 338-39.

Section 17-308 arguably satisfies the first prong insofar as it appears to be directed at regulating insurance reporting requirements and entities engaged in the insurance business. *See* Md. Code Ann., Ins. § 17-308. However, it does not appear that the certificate requirement is one that "substantially affect[s] the risk pooling arrangement between the insurer and the insured." That is, the requirement that insurers provide certificates to policyholders does not affect the scope of permissible insurance policies that may be offered. Therefore, this requirement does not satisfy the second prong. *See Miller*, 538 U.S. at 338-39; *see also Haymaker v. Reliance Standard Life Ins. Co.*, 2016 WL 3258439, at *3 (E.D. Pa. June 14, 2016) (concluding that state law concerning certain notice requirements of an employee benefit plan was preempted by ERISA); *Terry v. Northrop Grumman Health Plan*, 989 F. Supp. 2d 401, 410 (M.D. Pa. 2013) (same); *Estate of Trovato v. Marcal Mfg. LLC*, 2011 WL 4550169, at *4 (D.N.J. Sept. 29, 2011) (same). Accordingly, this Court finds that § 17-308 is not saved from preemption under § 1144(b). Consequently, ERISA preempts any duty Sun Life may have otherwise had to comply with § 17-308 certificate requirement. As such, Sun Life's alleged non-compliance with § 17-308 cannot be the basis for a breach of fiduciary duty claim.

*Failing to Provide Notice of Conversion Right*

Plaintiff next argues that Sun Life breached its fiduciary duty by failing to provide Galante with notice of his right to convert his group policy to an individual policy, as required by Maryland law. (Pl.'s Br. at 26-27). Section 17-309 of the Maryland insurance code requires that

a group life insurance policy contain a provision that allows a covered employee to convert the group policy to an individual policy subject to certain conditions. Md. Code Ann., Ins. § 17-309(a)(1)-(4). This provision also entitles the insured to "written notice of the insured's rights under this section at least 15 days prior to the expiration of the conversion period . . . ." *Id.* § 17-309(a)(5). To the extent § 17-309 sets a notice requirement, it too is preempted by ERISA. *See, e.g.*, *Haymaker*, 2016 WL 3258439, at *2-3 (concluding that Pennsylvania's requirement that insurers provide notice of an insured's conversion rights was preempted by ERISA); *Terry*, 989 F. Supp. 2d at 410 (M.D. Pa. 2013) (same); *Trovato*, 2011 WL 4550169, at *4 (New Jersey statute requiring insurer and/or employer to provide notice of an insured's conversion rights was preempted by ERISA). Accordingly, Sun Life's alleged failure to comply with § 17-309 cannot be the basis for a breach of fiduciary duty claim.[11]

*Continuing to Accept Premiums*

Plaintiff asserts that Sun Life breached its fiduciary duty by denying coverage after FINRA continued to accept premium payments which implicitly implied that Galante remained insured under the Policy. Plaintiff argues that because FINRA's group life insurance policy was self-administered, it was up to FINRA, and not Sun Life, to determine whether Galante remained eligible for benefits. (Pl.'s Br. at 27-32). Plaintiff further argues that by FINRA's continued acceptance of insurance premium payments from Galante, after his employment ceased and until his death and by forwarding of the premium payments to Sun Life, FINRA had, in fact, considered Galante an insured. Based on this argument, Plaintiff reasons that Sun Life breached

---

[11]     Section 17-309(5) does not specify whether it is the employer or the insurer that is to provide the required conversion notice, so even if § 17-309 was not preempted, it is unclear whether the violation would have been attributable to Sun Life, as opposed to FINRA.

its fiduciary duty by declaring Galante uninsured at the time of his death. (*Id.* at 29). Plaintiff, however, is mistaken.

Nowhere in the Policy or Agreement does Sun Life grant FINRA the right to decide, independently or on Sun Life's behalf, whether Galante is covered by the Policy, thus, obligating Sun Life to recognize Plaintiff as the beneficiary. On the contrary, the Policy provides that Sun Life must receive a satisfactory proof of claim in order to pay life insurance benefits. (Policy at 38). Plaintiff's argument fails for this reason alone.

It is also undisputed that FINRA, not Sun Life, was the entity that accepted the insurance premiums from Galante even after coverage ceased under the terms of the Policy. It was also FINRA that failed to notify Sun Life that Galante had ceased working and that he was to receive a conversion notice. Pursuant to the duties of FINRA and Sun Life as defined in the Policy and Agreement, Sun Life did not breach any duty owed to Galante when it continued to accept the monthly lump sum premium payments from FINRA, nor when it denied death benefits to Plaintiff after Galante died on the basis that he was uninsured under the terms of the Policy, despite receipt of his premiums. Finally, even if the acceptance of premiums by FINRA and its failure to notify Sun Life of Galante's conversion right could be held against Sun Life, it is clear that these alleged failures constituted clerical errors and/or omissions, which the Policy specifically provides "will not . . . effect or continue an individual's insurance which otherwise would not be in force." (Policy at 35); *see also Funicelli v. Sun Life Fin. (US) Servs. Co.*, 2014 WL 197911, at *8 (D.N.J. Jan. 14, 2014) (concluding that continued acceptance of premiums in the absence of an application to continue insurance coverage was an error that did not override the policy's termination provisions).

To the extent Plaintiff seeks to assert that Sun Life, by accepting the premiums forwarded

by FINRA, is estopped from declaring Galante ineligible or has otherwise waived any argument to that affect, such argument is also without merit. *See White v. Provident Life & Acc. Ins. Co.*, 114 F.3d 26, 29 (4th Cir. 1997) (noting that state law waiver and estoppel claims based on a continued acceptance of premiums are preempted by ERISA).[12]

### Age Discrimination

Plaintiff next argues that Sun Life breached its fiduciary duty by including and applying the provision of the Policy that links the termination of group insurance coverage to the age the employee ceases working. Plaintiff argues that this provision violates the Age Discrimination in Employment Act of 1967 (the "ADEA"), and was not approved by the Maryland Insurance Administration, as allegedly required by Maryland law. (Pl.'s Br. at 32-37). Plaintiff maintains that, based on this breach of fiduciary duty, the insurance provision should be declared unenforceable and Galante should have been considered eligible for continued life insurance benefits.[13] (*Id.*).

The relevant Policy provision stipulates that an employee's insurance coverage terminates at:

> the end of the month in which employment terminates. Ceasing to be Actively at Work will be deemed termination of employment,

---

[12] Plaintiff seems to place significant reliance on the confusion of FINRA's employees over whether Galante was covered. (*See* Pl.s' Br. at 45-46). Statements made by FINRA's employees do not control whether Galante, under the clear terms of the Policy, was still insured at the time of his death. In addition, Plaintiff seeks to rely on the deposition testimony of Ms. Dena Koutsoupias, one of Sun Life's customer service representatives, regarding whether it is FINRA or Sun Life that determines eligibility. (*Id.* at 27, 31-32). Ms. Koutsoupias was not testifying as Sun Life's corporate designee and, thus, her testimony is not binding on Sun Life. Further, even if Ms. Koutsoupias had been Sun Life's corporate designee, her testimony regarding eligibility under the Policy would be a legal conclusion that would not bind Sun Life. *See AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 229, 299 n. 9 (3d Cir. 2009).

[13] This Court notes that this claim could also have been raised as a denial of benefits claim, based upon an argument that the Policy contained an unlawful provision that, when struck, would result in Galante being insured at the time of his death. Plaintiff, however, does not assert a denial of benefits claim, but rather a claim for breach of fiduciary duty. It is this equitable claim this Court considers.

> except . . . the Policyholder may continue the insurance by paying
> the required premiums, subject to the following . . . For Life
> insurance – insurance may be continued for up to 12 months after
> an Employee is absent from work due to Injury or Sickness.
> However, if an Employee is under age 65, the Employer may
> continue an Employees insurance until the earlier of [] the date the
> Employee attains age 70; or [] the date the Employee is no longer
> receiving Long Term Disability benefits under the Employer's
> plan.

(Policy at 30).

In light of this wording, an employee who is absent from work due to injury or sickness who is under the age of sixty-five when his/her absence begins may retain group coverage until the age of seventy or when the employee stop receiving Long Term Disability benefits, whereas an employee who is sixty-five years old or older loses group coverage after twelve months. Under the terms of the Policy, because Galante was sixty-five years old when he ceased working due to illness on March 3, 2013, his group benefits ended on March 3, 2014, and when he died on July 28, 2015, he was deemed uninsured by Sun Life. Had Galante been sixty-four years and eleven months old when he ceased working, he would have been covered under the terms of the Policy and Plaintiff would have been entitled to the insurance proceeds under the Policy. Plaintiff contends that because this provision discriminates based upon age, it violates the ADEA, and by applying it to Galante, Sun Life breached its fiduciary duty.

Plaintiff has not, however, asserted an ADEA claim against either FINRA or Sun Life. Instead, she asserts only a breach of fiduciary duty claim. In the motion for summary judgment, Plaintiff baldly argues, without legal support, that the insurance provision must be stricken because it violates the ADEA. Without deciding this issue, even assuming, that the provision

violates the ADEA[14] and, further, that this violation can be attributed to Sun Life, liability cannot lie against Sun Life based on a breach of fiduciary duty under ERISA for such an alleged ADEA violation. The inclusion of this provision, which was added at the request of FINRA, is not an affirmative misrepresentation or omission that is required to establish a claim for breach of fiduciary duty. In addition, while the ADEA prohibits discrimination based upon age, "ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91, (1983).

Plaintiff also contends that because Sun Life did not present the age-based provision to the Maryland Insurance Administration for approval as required by Md. Code Ann., Ins. § 12-203, this provision is invalid. While the parties dispute whether this specific age-based provision was submitted to the Maryland Insurance Administration, it is clear that, even if it had not been presented, Plaintiff's argument is unavailing. Under Maryland law, "unique riders, endorsements, or forms that are . . . used at the request of the individual policyholder, contract holder, or certificate holder," do not need to be filed and/or approved by the Maryland Insurance Administration. *See* Md. Code Ann., Ins. § 12-203(2)(ii). Accordingly, even if Sun Life had not provided the age-based provision to the Maryland Insurance Administration, it would not have violated § 12-203 because it was FINRA that requested this particular provision and no breach of any obligation under § 12-203 occurred.

---

[14]     This Court need not determine whether this provision violates the ADEA because Plaintiff does not assert an ADEA claim and the provision's compliance or not with the ADEA is not relevant to Plaintiff's ERISA breach of fiduciary duty claim.

*Failure to Send Conversion Notice Violated Agreement*

Next, Plaintiff argues that Sun Life's failure to send Galante a notice of his right to convert the group policy to an individual one constitutes a breach of its fiduciary duty. Plaintiff relies on the terms of the Agreement between FINRA and Sun Life to argue that Sun Life agreed to send out notices to eligible plan participants of their right to convert to an individual policy, and that by failing to do so, breached of its fiduciary duties. (Pl.'s Br. at 37-39). Plaintiff is misguided.

Under the terms of the Policy, it was FINRA, and not Sun Life, that was required to notify plan participants of their right to convert to an individual policy. (*See* Policy at 20). However, in the Agreement between FINRA and Sun Life, Sun Life agreed to "certain *non-fiduciary* and nondiscretionary administrative services to provide notice to Plan Participants identified by [FINRA] on the Weekly Report of their right to exercise the Conversion and Portability Privileges under the Policy." (Agreement at 2) (emphasis added). In the Agreement, FINRA agreed to be solely responsible for providing Sun Life with the "weekly report listing all Plan participants and dependents whose coverage has terminated, in whole or in part, under the Policy . . . who may be eligible to apply for the Conversion and Portability Privileges under the Policy," and agreed that, if it failed to provide Sun Life with the necessary information, Sun Life "shall be relieved of any obligation under this Agreement to provide notice to any Plan Participant to whom it otherwise would have been obligated to provide notice . . . and (b) [FINRA] shall be solely responsible for notifying any such Plan Participant that he or she may be eligible to apply for the Conversion and Portability Privileges under the Policy." (*Id.*). FINRA and Sun Life stipulated that "Sun Life is neither a fiduciary nor an administrator of the Plan for the purpose of providing services under this Agreement." (*Id.* at 4).

It is undisputed that FINRA did not include Galante on a weekly report until after his death and, as such, a timely notice of conversion was not sent by Sun Life to Galante. It is also clear that under the terms of the Agreement FINRA's failure to include Galante's name and identifying information on the weekly report relieved Sun Life from any liability for not sending a conversion notice to Galante. In sum, Sun Life's obligation to send the conversion notice was not triggered as a result of FINRA's failure to provide the requisite information. Accordingly, no claim for breach of a duty owed by Sun Life, fiduciary or otherwise, can be premised on the terms of the Agreement and it not sending Galante a conversion notice.

*Failing to Produce the Administrative Record*

Next, Plaintiff argues that Sun Life breached its fiduciary duty by not timely producing the entire administrative record during the administrative appeal which hindered "a complete and thorough review and consideration of facts in support of the administrative appeal . . . ." (Pl.'s Mot. at 39). Plaintiff argues that this failure was an intentional violation of ERISA by Sun Life, though Plaintiff notes that "ERISA does not provide an award of damages for such bad faith . . . ." (*Id.* at 39-40). Sun Life disputes that it failed to produce the entire administrative record.

Regardless of the veracity of this allegation, Plaintiff has not provided any legal support to conclude that the delayed production of the administrative record for an administrative appeal constitutes a breach of a fiduciary duty owed by Sun Life. Further, as admitted by Plaintiff, ERISA does not provide for damages for such discovery disputes. Accordingly, the alleged failure to timely produce the entire administrative record does not constitute a breach of fiduciary duty owed by Sun Life towards Galante or Plaintiff, and does not support a claim for breach of

fiduciary duty or damages.[15]  Thus, this argument is dismissed.

*Failing to Apply the Policy Amendment Retroactively*

Plaintiff argues that Sun Life breached its fiduciary duty by failing to retroactively apply an amendment to the Policy that, had it been applied retroactively, would have affected Plaintiff's insurance coverage.  (Pl.'s Br. at 41-42).  Sun Life contends FINRA made a request to amend the language of the Policy provision from "if an Employee is under age 65" to "if an Employee is receiving Long Term Disability benefits."  [ECF 42-7 at 2-3].  Sun Life agreed and the amendment became effective on December 1, 2015.  (*Id.*)  Galante died on July 28, 2015.

After a careful review of the Policy, nothing in the Policy or the amendment suggests or supports Plaintiff's argument that the amendment was meant to be retroactive.  Plaintiff argues that the amendment is retroactive because the amendment is silent as to its retroactivity, and because she began her administrative appeal after December 1, 2015.[16]  (*Id.* at 41).  While this is a creative argument, it has no legal merit.  *See Confer v. Custom Eng'g Co.*, 952 F.2d 41, 43 (3d Cir. 1991) (noting that ERISA plans are maintained by written instruments, and "formal amendment [can] operate only prospectively," and do not affect claims that accrued prior to the amendment).  Further, Plaintiff does not provide any support to her contention that Sun Life's failure to apply this amendment retroactively constitutes a breach of a duty, fiduciary or

---

[15]     In its analysis of the cross-motions for summary judgment, this Court considered the record, the Policy and Agreement, and the relevant facts *de novo* and reached its finding that the claimed benefits were appropriately denied under the terms of the Policy.

[16]     Plaintiff also argues that the "Termination Provisions" of the Policy, which provides that the "Policyholder . . . must act so as not to discriminate unfairly among Employees in similar situations," required that FINRA request and insist that the amendment apply to Galante.  (Pl.'s Br. at 41-42).  Plaintiff provides no support that other employees similarly situated to Galante (*i.e.*, at least sixty-five years old when they went on disability) were treated differently.  Further, even if Galante had been unfairly discriminated against, the non-discrimination provision applies to the policyholder, *i.e.*, FINRA, not Sun Life.  Accordingly, this provision of the Policy does not support that the amendment should be applied retroactively.

otherwise, owed by Sun Life.  Finding no legal basis for this argument, this Court concludes that Sun Life did not owe a duty to apply the amendment retroactively, and thus did not breach a fiduciary duty when it declined to do so.[17]

**CONCLUSION**

Based on its review of the record, this Court finds that there are no genuine issues of material fact in this matter.  The arguments presented by the parties have been legal in nature. Plaintiff has argued that Sun Life is a fiduciary, and that its actions and/or omissions constitute material affirmative misrepresentations and/or failures of obligations which Galante relied on to his detriment.  (Pl.'s Br. at 44-48).  This Court has considered each claim and has determined that none of the acts and/or omissions identified by Plaintiff constitute a breach of any duty, fiduciary or otherwise, owed by Sun Life to Galante.  This Court further finds that Sun Life has established that the material facts, construed in Plaintiff's favor, entitles Sun Life to judgment as a matter of law consistent with Fed. R. Civ. P. 56(a).  Therefore, for the reasons set forth, Sun Life's motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied.  An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.

---

[17]    This Court notes that this argument appears to be a denial of benefits argument, as opposed to a breach of fiduciary duty argument.  Even construed as a denial of benefits argument, it is clear that the amendment was not retroactive, and the Policy provisions in place at Galante's death warranted the denial of benefits.